IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**RICO F. HARRIS**                                                                           **PLAINTIFF**

**v.**                                                              **Civil Action No.: 3:14-cv-00218-MPM-SAA**

**TUNICA COUNTY, MISSISSIPPI**
**and CALVIN K. ("K.C.") HAMP, SR.,**
**In his Individual Capacity**                                                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court for consideration on defendant Tunica County, Mississippi's ("Tunica County") *Motion for Summary Judgment* (the "Motion") [52][53]. Plaintiff Rico F. Harris ("Harris") filed a *Response in Opposition* (the "Response") [61][62], to which Tunica County filed a *Rebuttal to Plaintiff's Response* (the "Rebuttal") [67]. The Court has considered the Motion, Response, and Rebuttal, as well as relevant case law and evidence, and is now prepared to rule.

Harris commenced this action by filing his Complaint [1] against Tunica County based upon his termination from the Tunica County Sheriff's Department ("TCSD"). In its present posture, this case consists of the following claims by Harris against Tunica County: (1) violation of free speech rights protected by the First Amendment and (2) gender discrimination in violation of Title VII. Harris has also asserted claims against Sheriff Calvin Hamp, which will be considered in a separate order. Having considered the arguments made by the parties and the authorities cited therein, the Court finds that genuine issues of material fact remain as to both claims, so as to preclude summary judgment.

# I. BACKGROUND

In 2005, the plaintiff, Rico F. Harris, was hired as a patrolman by TCSD. In August 2013, after a series of promotions, Harris became Captain of Investigations, the position he held for the remainder of his employment with TCSD.

In 2011, Bernadette Logan ("Detective Logan") was hired by TCSD as a patrol officer and was thereafter assigned to the detective division. Harris contends Sheriff Hamp developed a practice of providing Detective Logan and other female employees preferential treatment.

On May 11, 2013, TCSD was alerted to suspicious activity at an apartment occupied by Rosemary Jones Brown. Harris and Detective Logan were both dispatched to the apartment complex to investigate. The investigation quickly revealed that Brown was deceased and had apparently been murdered. Physical evidence at the scene connected Gloria Logan, Detective Logan's mother, to the crime. Thus, Gloria Logan became the primary suspect in the case. Upon becoming aware of her mother's potential involvement, Detective Logan recused herself from the case.

Thereafter, Harris voiced his concern to Sheriff Hamp, Commander Cedric Davis, and Chief Deputy Randy Stewart that TCSD should not investigate the murder because there was a clear conflict of interest, recommending that Sheriff Hamp refer the case to the Mississippi Bureau of Investigation ("MBI"). Harris contends Sheriff Hamp informed him that TCSD would not recuse itself because he did not believe a conflict of interest existed. In contrast, in his deposition, Sheriff Hamp testified that he contacted MBI but was informed that MBI did not have anyone available to investigate the case. However, Peter Clinton, the Lieutenant in charge of the MBI Batesville District during May 2013, stated in an affidavit that MBI was never

contacted concerning the case. Nevertheless, TCSD did not recuse, and Harris served as the lead investigator on the case.

On the day of the murder, Harris called the District Attorney's office and spoke with Assistant District Attorney Rosharwin Williams to explain the situation. The District Attorney's office later recused itself from the case on April 11, 2014, citing a conflict of interest due to its close working relationship with TCSD. However, Harris remained in contact with Williams even after the District Attorney's office recused itself, voicing his frustration that TCSD would not refer the case to MBI.

Although Harris continued to handle the case, both he and Lieutenant William Mullen ("Mullen"), who assisted with the investigation, believed Sheriff Hamp improperly hindered the investigation. Harris claims that Sheriff Hamp prevented him from conducting necessary interviews and did not allow him to visit the crime scene before it was cleaned. Harris and Mullen both testified that they reported their concerns about Sheriff Hamp's conduct to Commander Davis on multiple occasions, but no responsive action was taken. Commander Davis, however, denied that Harris or Mullen reported any concerns to him.

On or about April 14, 2014, Harris communicated with a member of the Attorney General's office, which had taken over the case after the District Attorney's office recused. On April 15, 2014, Harris personally met with a representative from the Attorney General's office to provide a briefing of the case and a copy of his case report. Later that day, Harris contacted Tunica County Justice Court Judge Louise Linzy, who was scheduled to preside over Gloria Logan's initial appearance in the murder case, to express his concerns about the manner in which the case had been handled. Judge Linzy thereafter contacted TCSD to report Harris's call and

was instructed to complete a written report. In her deposition, Judge Linzy testified that she did not call TCSD to file a complaint but simply desired to obtain more details about the situation.

Also on April 15, 2014, Harris received notice from Commander Davis that he was being transferred to the patrol division due to his failure to timely prepare the Brown murder case for presentation to the grand jury in February. Harris contends his failure to complete the case preparation was due to Sheriff Hamp's interference with the investigation. On the following day, April 16, 2014, Harris was placed on administrative leave pending an internal affairs investigation pertaining to his conversation with Judge Linzy. On April 23, 2014, while on administrative leave, Harris failed to honor a subpoena to appear in court regarding another matter. Thereafter, on April 25, 2014, Harris received an Employment Dismissal, terminating his employment with TCSD. The Employment Dismissal provided that Harris was terminated for failure to timely prepare the murder case for presentation to the grand jury, inappropriate contact with Judge Linzy, and failure to appear in court to honor a subpoena. Upon Harris's termination, Persundra Jones, a female, was promoted to Harris's position. Shortly thereafter, Harris filed this suit.

## II. CONCLUSIONS OF LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001). If the moving party meets its initial burden

of showing there is no genuine dispute as to any material fact, the nonmoving party must "come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37F.3d 1069, 1075 (5th Cir. 1994)).

Applying this standard, the Court finds that genuine issues of material fact remain in dispute, requiring further development of evidence, and that summary judgment should be denied as to both claims.

Tunica County failed to meet its burden regarding Harris's First Amendment claim. Public employees are not stripped of their First Amendment right to freedom of expression by virtue of their employment. *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Rather, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen on matters of public concern." *Davis v. McKinney*, 5118 F.3d 304, 311 (5th Cir. 2008). In order to prevail on a First Amendment retaliation claim, a public employee must establish that: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) her speech motivated the employer's adverse action. *Modica v. Taylor*, 465 F.3d 174, 179-80 (5th Cir. 2006). "[S]ummary judgment should be used most sparingly in . . . First Amendment cases . . . involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities." *Haverda v.*

*Hays County*, 723 F.3d 586, 592 (5th Cir. 2013) (citing *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 600 (5th Cir. 2001)).

Turning to Harris's claim, Tunica County does not dispute that Harris suffered an adverse employment action, as he was terminated. Tunica County does contend, however, that Harris cannot satisfy the second element of his claim, arguing Harris's statements concerned his employment duties as an investigator and were not a matter of public concern. Regarding this element, "[the] court must first decide whether the plaintiff was speaking as a citizen disassociated with his public duties, or whether the plaintiff was speaking in furtherance of the duties of his or her public employment. Only speech made in one's capacity as a citizen is entitled to First Amendment protection." *Howell v. Town of Ball*, — F.3d —, 2016 WL 3595722, at *3 (5th Cir. 2016). The main inquiry "is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015) (citing *Lane v. Franks*, — U.S. —, 134 S.Ct. 2369, 2379, 189 L.Ed.2d 312 (2014)). Further, the inquiry is a "practical one," considering "solely [] whether the speech at issue is *ordinarily* within the scope of the employee's professional duties." *Howell*, 2016 WL 3595722, at *4 (citing *Lane*, 134 S.Ct. at 2378; *Garcetti v. Ceballos*, 547 U.S. 410, 424-25, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)) (emphasis previously added).

Harris's statements reporting a conflict of interest and improper conduct by Sheriff Hamp to outside agencies were not within his ordinary job duties as an investigator. In their depositions, Sheriff Hamp, Commander Davis, and Chief Deputy Stewart all testified that Harris's job responsibilities did not include reporting a conflict of interest to another agency. Moreover, Sheriff Hamp testified that Harris's outside conversations did not interfere with any

operations of TCSD. While Harris's statements may have been related to his employment, the statements were not *ordinarily* within the scope of his professional duties as an investigator.

Regarding the third element, even if a public employee speaks on a matter of public concern, the speech is only protected if the employee's interest in expressing himself outweighs the government's interest in promoting the efficiency of its services. *Pickering*, 391 U.S. at 568. In making this determination, the Court considers multiple factors, including:

> (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers.

*Jordan v. Ector Cty.*, 516 F.3d 290, 299 (5th Cir. 2008) (citing *Brady v. Fort Bend Cty.*, 145 F.3d 691, 707 (5th Cir. 1998)).

Moreover, "[t]he more central a matter of public concern the speech at issue, the stronger the employer's showing of counter-balancing governmental interest must be." *Jordan*, 516 F.3d at 299. The Fifth Circuit has often held that statements regarding police misconduct and corruption are important matters of the utmost public concern. *Markos v. City of Atlanta, Tex.*, 364 F.3d 567, 570 (5th Cir. 2004).[1]

Taking into account the strong public interest in discovering police misconduct, the Court finds that Harris's interest in expressing himself outweighs Tunica County's interest in promoting efficiency. Harris's communication with the District Attorney's office, Attorney

---

[1] *See, e.g., Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001) ("There is perhaps no subset of 'matters of public concern' more important, [for purposes of First Amendment protection of speech of public employees,] than bringing official misconduct to light."); *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 191-92 (5th Cir. 1988) ("The disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the operation of a police department.")

General's office, and Judge Linzy was directly related to police misconduct. Thus, Tunica County must show a strong governmental interest to outweigh Harris's interest in expressing himself. Simply put, Tunica County cannot do so. The record provides no evidence that Harris's conduct inhibited the performance of his duties or working relationships with other employees. Harris's conduct was not hostile or abusive. Additionally, there is no evidence that Harris's conduct impaired discipline by superiors or harmony among employees. Ultimately, the balancing test weighs in Harris's favor.

Tunica County also argues that Harris cannot create a genuine issue of material fact as to causation, contending there is no proof that his termination was motivated by his exercise of his First Amendment right. The Court is unpersuaded by this argument. "[S]ummary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate." *Haverda v. Hays Cty.*, 723 F.3d 586, 595 (5th Cir. 2013).[2] The timing of Harris's termination, along with the multiple factual disputes between the parties surrounding the events leading up to Harris's termination, creates, at a minimum, a genuine issue of material fact such that a jury could find that Harris's termination was motivated by his exercise of his constitutional right to express himself.

Because genuine disputes of material fact remain, summary judgment is not proper as to Harris's First Amendment retaliation claim.

Regarding the Title VII gender discrimination claim, the Court again finds that summary judgment is not appropriate. To establish a circumstantial *prima facie* case of unlawful gender discrimination, the plaintiff must show that: (1) he is a member of a protected class; (2) he is

---

[2] *See also Click v. Copeland*, 970 F.2d 106, 113 (5th Cir. 1992) ("Whether an employee's protected conduct was a substantial or motivating factor in an employer's decision to take action against the employee is a question of fact, ordinarily rendering summary judgment inappropriate.")

qualified; (3) he experienced an adverse employment decision; and (4) he was replaced by someone outside the protected class or was treated less favorably than employees outside the protected class. *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant to produce evidence that the adverse employment action was taken "for a legitimate, nondiscriminatory reason." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the defendant has articulated legitimate, nondiscriminatory reasons for its employment decision, the plaintiff must present "substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, the plaintiff must substantiate his claim by providing evidence that discrimination lay at the heart of the employer's decision. *Price v. Fed. Express. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Moreover, if the plaintiff can show that the employer's stated reason is false, this showing, along with a *prima facie* case, may permit the jury to find that the employer discriminated against the plaintiff without the need for additional evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In the present case, Harris has provided sufficient evidence to prevent summary judgment. There is no real dispute that Harris can establish a *prima facie* case, as he was a male who was qualified for his job, terminated, and replaced by a female. Thus, the burden shifts to Tunica County to articulate a legitimate nondiscriminatory reason for the termination. The Employment Dismissal provided that Harris's termination was due to his failure to timely submit the Brown murder case for presentation to the grand jury, inappropriate communications with Judge Linzy, and failure to honor a subpoena to appear in court.

Through briefing and deposition testimony, Harris has rebutted these proffered reasons. In his deposition, Sheriff Hamp testified that no other TCSD employee had been dismissed for failure to complete the preparation of a case for the grand jury within eight months. Hamp also testified that no person had been dismissed for failure to attend a court appearance. Moreover, although Commander Davis testified that Judge Linzy described Harris's tone as "more or less forceful" during Harris's conversation with her, Judge Linzy herself testified that she did not think Harris was disrespectful or rude. In addition to rebutting Tunica County's proffered reasons, Harris has provided additional evidence of pretext through the deposition of Eva Palmer, a former TCSD employee, who testified that Sheriff Hamp and Commander Davis often provided preferential treatment to female employees.

Viewing this evidence in the light most favorable to Harris, the Court finds that genuine issues of material fact remain in dispute, such that summary judgment is not proper.

## III.   CONCLUSION

Rule 56 of the Federal Rules of Civil Procedure mandates that summary judgment be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. Upon review of the pleadings and evidence, and for the reasons set forth above, the Court finds that genuine issues of material fact exist, precluding summary judgment. Accordingly, it is hereby, ORDERED that Tunica County's *Motion for Summary Judgment* [53] is DENIED.

SO ORDERED this the 25th day of August, 2016.

                                              **/s/ MICHAEL P. MILLS**
                                              **UNITED STATES DISTRICT JUDGE**
                                              **NORTHERN DISTRICT OF MISSISSIPPI**