IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

RICO F. HARRIS                                                                    PLAINTIFF

v.                                                        Civil Action No.: 3:14-cv-00218-MPM-SAA

TUNICA COUNTY, MISSISSIPPI
and CALVIN K. ("K.C.") HAMP, SR.,
In his Individual Capacity                                                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER PARTIALLY
GRANTING MOTION TO DISMISS**

This matter comes before the Court on defendant Calvin K. Hamp, Sr.'s ("Sheriff Hamp") *Motion to Dismiss* ("the Motion") [51][54]. Plaintiff Rico F. Harris ("Harris") filed a *Response in Opposition* ("the Response") [63][64]. Thereafter, Sheriff Hamp filed a *Reply to Plaintiff's Response* ("the Reply") [68]. The Court has considered the Motion, Response, and Reply, as well as relevant case law and evidence, and is now prepared to rule.

Harris asserts claims against Tunica County, Mississippi, ("Tunica County") and Sheriff Hamp, in his individual capacity, based upon events giving rise to Harris's termination from the Tunica County Sheriff's Department ("TCSD"). The Court previously considered Harris's claims against Tunica County in its *Memorandum Opinion and Order Denying Motion for Summary Judgment* [75]. The Court now turns to Harris's claims against Sheriff Hamp. In its present posture, this case consists of the following claims by Harris against Sheriff Hamp: (1) violation of free speech rights protected by the First Amendment and (2) malicious interference with employment under state law. Having considered the arguments made by the parties and the authorities cited therein, the Court finds that the Motion should be partially granted.

1

## I.  BACKGROUND

In 2005, the plaintiff, Rico F. Harris, was hired as a patrolman by TCSD. In August 2013, after a series of promotions, Harris became Captain of Investigations, the position he held for the remainder of his employment with TCSD.

In 2011, Bernadette Logan ("Detective Logan") was hired by TCSD as a patrol officer and was thereafter assigned to the detective division. Harris contends Sheriff Hamp developed a practice of providing Detective Logan and other female employees preferential treatment.

On May 11, 2013, TCSD was alerted to suspicious activity at an apartment occupied by Rosemary Jones Brown. Harris and Detective Logan were both dispatched to the apartment complex to investigate. The investigation quickly revealed that Brown was deceased and had apparently been murdered. Physical evidence at the scene connected Gloria Logan, Detective Logan's mother, to the crime. Thus, Gloria Logan became the primary suspect in the case. Upon becoming aware of her mother's potential involvement, Detective Logan recused herself from the case.

Thereafter, Harris voiced his concern to Sheriff Hamp, Commander Cedric Davis, and Chief Deputy Randy Stewart that TCSD should not investigate the murder because there was a clear conflict of interest, recommending that Sheriff Hamp refer the case to the Mississippi Bureau of Investigation ("MBI"). Harris contends Sheriff Hamp informed him that TCSD would not recuse itself because he did not believe a conflict of interest existed. In contrast, in his deposition, Sheriff Hamp testified that he contacted MBI but was informed that MBI did not have anyone available to investigate the case. However, Peter Clinton, the Lieutenant in charge of the MBI Batesville District during May 2013, stated in an affidavit that MBI was never

contacted concerning the case. Nevertheless, TCSD did not recuse, and Harris served as the lead investigator on the case.

On the day of the murder, Harris called the District Attorney's office and spoke with Assistant District Attorney Rosharwin Williams to explain the situation. The District Attorney's office later recused itself from the case on April 11, 2014, citing a conflict of interest due to its close working relationship with TCSD. However, Harris remained in contact with Williams even after the District Attorney's office recused itself, voicing his frustration that TCSD would not refer the case to MBI.

Although Harris continued to handle the case, both he and Lieutenant William Mullen ("Mullen"), who assisted with the investigation, believed Sheriff Hamp improperly hindered the investigation. Harris claims that Sheriff Hamp prevented him from conducting necessary interviews and did not allow him to visit the crime scene before it was cleaned. Harris and Mullen both testified that they reported their concerns about Sheriff Hamp's conduct to Commander Davis on multiple occasions, but no responsive action was taken. Commander Davis, however, denied that Harris or Mullen reported any concerns to him.

On or about April 14, 2014, Harris communicated with a member of the Attorney General's office, which had taken over the case after the District Attorney's office recused. On April 15, 2014, Harris personally met with a representative from the Attorney General's office to provide a briefing of the case and a copy of his case report. Later that day, Harris contacted Tunica County Justice Court Judge Louise Linzy, who was scheduled to preside over Gloria Logan's initial appearance in the murder case, to express his concerns about the manner in which the case had been handled. Judge Linzy thereafter contacted TCSD to report Harris's call and

3

was instructed to complete a written report. In her deposition, Judge Linzy testified that she did not call TCSD to file a complaint but simply desired to obtain more details about the situation.

Also on April 15, 2014, Harris received notice from Commander Davis that he was being transferred to the patrol division due to his failure to timely prepare the Brown murder case for presentation to the grand jury in February. Harris contends his failure to complete the case preparation was due to Sheriff Hamp's interference with the investigation. On the following day, April 16, 2014, Harris was placed on administrative leave pending an internal affairs investigation pertaining to his conversation with Judge Linzy. On April 23, 2014, while on administrative leave, Harris failed to honor a subpoena to appear in court regarding another matter. Thereafter, on April 25, 2014, Harris received an Employment Dismissal, terminating his employment with TCSD. The Employment Dismissal provided that Harris was terminated for failure to timely prepare the murder case for presentation to the grand jury, inappropriate contact with Judge Linzy, and failure to appear in court to honor a subpoena. Upon Harris's termination, Persundra Jones, a female, was promoted to Harris's position. Shortly thereafter, Harris filed this suit against Tunica County and Sheriff Hamp.

## II. CONCLUSIONS OF LAW

Sheriff Hamp has raised qualified immunity as a defense to Harris's Section 1983 First Amendment retaliation claim and, alternatively, argues that summary judgment is appropriate as to that claim. Sheriff Hamp also argues that summary judgment is proper as to Harris's state law malicious interference with employment claim.

*First Amendment retaliation claim:*

The qualified immunity defense shields public officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of

4

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2071, 179 L.Ed.2d 1149 (2011). The defense is broad, "provid[ing] ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

"Once a defendant properly invokes the defense of qualified immunity, the plaintiff bears the burden of proving that the defendant is not entitled to the doctrine's protection." *Howell v. Town of Ball*, — F.3d —, 2016 WL 3595722, at *5 (5th Cir. 2016) (citing *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005)). "To avoid dismissal, a plaintiff must plead specific facts, which if true, would defeat qualified immunity." *Howard v. Tunica Cty., Miss.*, 2000 WL 33907689, at *3 (N.D. Miss. Aug. 8, 2000) (citing *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 994-97 (5th Cir. 1995)). A public official is entitled to qualified immunity unless the plaintiff establishes that "(1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).

In the present case, once Sheriff Hamp raised the qualified immunity defense, the burden then shifted to Harris to show (1) that Sheriff Hamp violated his constitutional rights and (2) that Sheriff Hamp's conduct was unreasonable in light of clearly established law. The Court discussed in detail the potential violation of Harris's First Amendment rights in its opinion denying defendant Tunica County's motion for summary judgment. Taking Harris's allegations

as true, a constitutional violation may very well have occurred. Nevertheless, the Court finds the second prong of the qualified immunity analysis dispositive, as Sheriff Hamp's conduct did not violate law that was clearly established at the time.[1]

Under the second prong, "[a] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014) (citing *Ashcroft*, 563 U.S. at 741). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015). It is not required that there be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

The Supreme Court recently considered the qualified immunity issue in the First Amendment retaliation context in *Lane v. Franks*, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014). There, Lane, the plaintiff, alleged that he was terminated from his job as a public employee at Central Alabama Community College ("CACC") because of his testimony before a federal grand jury detailing facts about corruption at CACC. *Id.* at 2375. Lane sued Franks, the CACC president who made the termination decision. *Id.* at 2376. Franks raised the qualified immunity defense, arguing that an employee's right to provide subpoenaed testimony about workplace information was not clearly established at the time. *Id.* at 2377. Although holding that Lane's speech was entitled to First Amendment protection, the Supreme Court sided with Franks on the

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

qualified immunity issue, recognizing that no cases concerning the protection of a public employee's testimony before a grand jury had been decided at the time Franks terminated Lane. *Id.* at 2382. In its discussion, the Supreme Court emphasized that the Eleventh Circuit, the circuit in which the underlying events took place, had considered similar cases but did not provide a clear resolution to the issue. *Id.* Moreover, the Supreme Court rejected Lane's argument that precedent from two other circuits was sufficient to put Franks on notice that the firing was unconstitutional. *Id.* Ultimately, the Court held that although circuit court decisions had been issued on the topic, Lane could not show that the issue was "beyond debate." *Id.*

The Fifth Circuit also recently addressed a factually similar case in *Howell v. Town of Ball*, 2016 WL 3595722. In *Howell*, a former police officer for the town of Ball, Thomas Howell, gained information that Ball's mayor and police chief were involved in a scheme to fraudulently obtain disaster recovery funds from FEMA. *Id.* at *1. Howell relayed this information to FBI Agent Robert Deaton. *Id.* Howell later agreed to participate in the FBI's investigation into the matter by wearing a wire and secretly recording his conversations with the mayor and the Ball employees involved in the fraudulent scheme. *Id.* The investigation ultimately resulted in the mayor and four other Ball employees, including the police chief, being indicted. *Id.* at *2. Because of his involvement in the investigation, Howell was harassed by the new police chief, Daniel Caldwell, and the two parties engaged in a "heated discussion." *Id.* Thereafter, upon Caldwell's recommendation, Ball's Board of Aldermen conducted a hearing regarding Howell's employment status, which resulted in Howell's termination. *Id.* Howell then filed suit, alleging that Caldwell and the individual members of the board of aldermen violated his First Amendment rights when they fired him for participating in an FBI investigation. *Id.*

The Fifth Circuit held that the defendants were entitled to qualified immunity, providing that "it was not clearly established whether [Howell's] involvement in the FBI investigation was protected under the First Amendment." *Id.* at *5. In its opinion, the Fifth Circuit also emphasized that up until *Lane*, which held that the First Amendment protects any communication not made in furtherance of an employee's ordinary job duties, the controlling case on this issue was *Garcetti v. Ceballos*, which by its own admission, "did not articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id.* at *6 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 424, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)). In its discussion, the Fifth Circuit emphasized the lack of precedent applying *Garcetti* to a case where a police officer engaged in outside communications with another governmental agency in order to aid in an investigation. *Id.*

Similarly, this Court finds that Sheriff Hamp's conduct did not violate clearly established law. Harris was terminated in April 2014. The Supreme Court decided *Lane v. Franks* in June 2014. Because Harris was terminated before the *Lane* decision, *Garcetti*, a case where the Supreme Court itself admitted that it had not provided a comprehensive framework for the analysis in this area, was the most recent Supreme Court case on the issue at the time. *Lane* further illustrates that the Supreme Court had not at that time established clear precedent concerning the extent of a public employee's protection when communicating about workplace activities. In addition, *Howell* shows that the Fifth Circuit had not made clear the protection afforded to an employee engaging in communications with another governmental agency. These decisions provide insight into the unsettled nature of the law in this area at the time of Harris's termination and tend to show that the law was not clearly established.

Although later decisions from the Supreme Court and the Fifth Circuit have addressed and more fully developed the issue, when ruling on the qualified immunity issue, this Court is bound to consider the state of the law at the time of the alleged violation—that is, when Sheriff Hamp terminated Harris. As provided by the Supreme Court in *Lane*, the relevant inquiry is whether the defendant could reasonably have believed, at the time he fired the plaintiff, that a government employer could fire an employee on account of the conduct in which the plaintiff engaged. Here, the Court finds that the relevant law did not preclude Sheriff Hamp from believing he could legally fire Harris. Thus, the law was not clearly established at the time, and Sheriff Hamp is entitled to qualified immunity.

Arguing in opposition, Harris asserts that "it is undisputed that the rights of public employees to speak on matters of public concern has been clearly established for over fifty (50) years." This argument is not well taken. The Supreme Court has explicitly cautioned courts against defining clearly established law "at a high level of generality." *City and Cty. of San Francisco, Cal. v. Sheehan*, 135 S.Ct. 1765, 1775-76, 191 L.Ed.2d 856 (2015); *Brosseau v. Haugen*, 543 US. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 58 (2004) ("[T]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.").[2]

Relying on this extensive precedent, the Court rejects Harris's proposed definition of the right at issue, as it falls directly within the broad, generalized category against which the Supreme Court has continuously cautioned. While the Court agrees that a public employee's right to speak on matters of public concern is well settled, Harris's proposed definition is much too broad for the qualified immunity inquiry. Certainly the Supreme Court would not have

---

[2] *See also Howell*, 2016 WL 3595722, at *6 (finding insufficient the plaintiff's definition of the right at issue as simply "First Amendment" rights); *Morgan v. Swanson*, 755 F.3d 757, 760 (5th Cir. 2014) ("A plaintiff does not overcome the qualified immunity defense by alleging the violation of a right that is only defined at a high level of generality.").

recently considered *Lane v. Franks*, a case with similar facts, if the right at issue was as clear as Harris suggests. The Court thus rejects Harris's generalized definition and finds that Sheriff Hamp is entitled to qualified immunity as to the First Amendment retaliation claim.[3]

*Malicious interference with employment claim:*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000) (citing *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 115, 161 (5th Cir. 1996)). However, the nonmoving party cannot defeat summary judgment by providing "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.' " *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). If a reasonable jury could not return a verdict in favor of the nonmoving party, summary judgment is proper. *Id.* (citing *Anderson*, 447 U.S. at 248).

---

[3] Because it finds that Sheriff Hamp is entitled to qualified immunity as to the First Amendment retaliation claim, the Court need not consider Sheriff Hamp's alternative motion for summary judgment regarding that claim.

Under Mississippi law, a claim for malicious interference with employment is treated the same as a claim for tortious interference with contract. *Guest-White v. Checker Leasing, Inc.*, 2016 WL 595407,at *5 (N.D. Miss. Feb. 11, 2016) (citing *Roberson v. Winston Cty., Miss.*, 2002 WL 449667 (N.D. Miss. Mar. 4, 2002)). Tortious interference with contract is defined as "malicious or intentional interference with a valid and enforceable contract *by a third party* which causes one contracting party not to be able to perform and the failure to perform results in a monetary loss for the other contracting party." *Courtney v. Glenn*, 782 So.2d 162, 164-65 (Miss. Ct. App. 2000) (citing *Cenac v. Murry*, 609 So.2d 1257, 1268 (Miss. 1992)) (emphasis added).[4] In order to establish a tortious interference with contract claim, the plaintiff must show: (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiff in his lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause (which constitutes malice); and (4) that actual damage and loss resulted. *Protective Serv. Life Ins. Co. v. Carter*, 445 So.2d 215, 217 (Miss. 1983).

While Mississippi law recognizes malicious interference with employment claims, "a person occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with the principal's contractual relationship with a third person." *Guest-White*, 2016 WL 595407, at *5 (citing *Morrison v. Miss. Enter. for Tech., Inc.*, 798 So.2d 567, 574 (Miss. Ct. App. 2001)). More specifically, a supervisor is privileged to interfere with an employee's employment contract unless the

---

[4] In this context, malice is "the intentional doing of a harmful act without justification or excuse, or stated differently, the willful violation of a known right." *Cenac*, 609 So.2d at 1268 (citing *Mid-Continent Tel. Corp. Home Tel. Co.*, 319 F. Supp. 1176, 1199-1200 (N.D. Miss. 1970)).

supervisor's actions are taken in bad faith. *Wigginton v. Washington Cty., Miss.*, 2013 WL 3157565, at *9 (N.D. Miss. June 20, 2013) (citing *Morrison*, 798 So.2d at 574).

Here, Sheriff Hamp occupied a position of responsibility as to Harris's employment. Thus, Sheriff Hamp's actions were privileged so long as they were taken within the scope of his responsibility and without bad faith. It is not seriously disputed that Sheriff Hamp was acting within the scope of his employment responsibilities when he made the termination decision; thus, the crucial inquiry is whether Sheriff Hamp acted in bad faith. "[B]ad faith raises an issue of motive." *Guest-White*, 2016 WL 595407, at *6. Direct evidence of bad faith is not necessary; rather, a finding of bad faith can be inferred from other evidence. *Id.* "The conclusion, though, must be that the actor was malicious or recklessly disregarded the rights of the person injured." *Id.* (citing *Stephen v. Winston Cty., Miss.*, 2008 WL 4813829, at *8-9 (N.D. Miss. Nov. 4, 2008)).

The Court finds that Harris has provided sufficient evidence to survive summary judgment as to this claim. Although Harris has not provided direct evidence of bad faith, Harris has provided testimony that Sheriff Hamp interfered with the Brown murder investigation then subjected Harris to discipline for failure to complete the investigation. Moreover, Harris has also provided evidence of the close time period between his conversations with the District Attorney's office and Attorney General's office, which portrayed Sheriff Hamp in a negative light, and his termination. This circumstantial evidence, considered as a whole, creates a question of fact as to whether Sheriff Hamp's decision to terminate Harris was made in bad faith.

At the summary judgment stage, this Court's role is simply to determine whether a dispute as to a material fact exists—not resolve such a dispute. Therefore, because Harris has

provided sufficient evidence to create a genuine dispute as to whether Sheriff Hamp acted in bad faith, summary judgment is not proper as to the malicious interference with employment claim.

### III. CONCLUSION

Upon review of the submissions of the parties and the authorities cited therein, and for the reasons set forth above, the Court finds that Harris's First Amendment retaliation claim against Sheriff Hamp should be dismissed based upon qualified immunity. Regarding Harris's malicious interference with employment claim, the Court finds that genuine issues of material fact remain in dispute, precluding summary judgment. Accordingly, it is hereby, ORDERED that Sheriff Hamp's *Motion to Dismiss* [54] is GRANTED IN PART.

SO ORDERED this the 29th day of August, 2016.

/s/ **MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**